UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SHARI-LIANE SANGSTER,

           Plaintiff,

v.

URBANWORLD FOUNDATION, INC. and STACY SPIKES,

           Defendants.
------------------------------------------------------------------X

**Civil Action No.**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Shari-Liane Sangster ("Plaintiff" or "Sangster") brings this action by her attorneys, Imbesi Law Group P.C., seeking damages and other appropriate relief for her claims of unpaid wages and failure to provide proper wage notices against Defendant Urbanworld Foundation, Inc. ("Defendant" or "Urbanworld") and Defendant Stacy Spikes ("Spikes") (collectively, "Defendants"), and alleges upon information and belief as follows:

## INTRODUCTION

1. Plaintiff brings this action to remedy Defendant's wage and hour violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Defendant failed to pay Plaintiff several months of her lawfully owed wages and failed to reimburse her for health insurance pursuant to its agreement.

2. As a result of Defendants' violations, Plaintiff is entitled to recover unpaid wages, liquidated damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. 8 and 28 U.S.C. § 1331.

4. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

1

5. Venue is proper in this District pursuant to 28 U.S.C. §1391 as the events and conduct giving rise to the claims occurred in this District and the Defendant transacts business in this District.

## PARTIES

6. Plaintiff Sangster is a citizen of the State of New York and resides in Brooklyn, New York.

7. Defendant Urbanworld is a domestic not-for-profit corporation, operating a multi-day film festival in New York City. Defendant's principal place of business located at 174 West 4th Street, #119, New York, New York 10014 and Defendant regularly transactions business in New York, New York.

8. Defendant Stacy Spikes is the founder and chairman of Urbanworld. Upon information and belief, Mr. Spikes is a resident of New York.

9. At all relevant times, Defendants exercised control over the terms and conditions of Plaintiff's employment, including the power to make decisions relating to her pay.

10. At all relevant times, Defendant was and continues to be an enterprise engaged in commerce, within the meaning of the FLSA in that its employees regularly transacted business across state lines (for example: i) traveling to other states, ii) invoicing partners across the country, iii) telephone calls, iv) e-mails, v) accepting partnership funds from across the country, and more).

11. At all relevant times, upon information and belief, based on public filings, Defendant's revenue exceeded $500,000 in the year in which Plaintiff was employed.

12. At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendant.

## STATEMENT OF FACTS

I.    **Background**

13.    Plaintiff and Defendants entered into a written employment agreement, signed on February 20, 2024, by Plaintiff and Spikes (Defendant's founder/chairman).

14.    On or about March 18, 2024, Plaintiff began working for Defendant as its Chief Development Officer.

15.    The written employment agreement provided for a base salary of $165,000, payable in accordance with Defendant's regular payroll schedule, and the possibility of bonuses.

16.    The written agreement provided that the "employment relationship will remain in effect throughout the Employee's tenure with the Company and may only be altered in a writing signed by both the Employee and a duly authorized officer of the Company."

17.    Despite being a full-time employee, and her employment agreement referring to her as "Employee," Plaintiff was required to submit invoices to receive her base salary – contrary to typical payroll practices for employees.

18.    From March 2024 to July 2024, Plaintiff was paid in accordance with Defendant's payroll schedule upon submission of her invoices.

19.    However, in August of 2024, Defendant abruptly stopped making salary payments to Plaintiff, despite continuing to receive the benefits of Plaintiff's full-time work.

20.    Plaintiff continued working full-time for Defendant and submitting her invoices until December 6, 2024.

II.    **Admission of Unpaid Wages**

21.    Prior to her departure, on November 27, 2024, Plaintiff e-mailed Gabrielle Glore, an employee and board member of Defendant, regarding the unpaid invoices. Plaintiff and Ms. Glore communicated regarding some of the details of the invoices, and on January 5, 2025, Ms.

Glore responded, "I'm considering all of these 9 invoices as outstanding." Ms. Glore agreed on a payment plan for two of the invoices, concluding "this payment will bring us to 7 outstanding invoices."

22. At the time of Plaintiff's resignation, she had nine unpaid invoices.

23. After her departure, Defendant paid Plaintiff on three of the outstanding invoices, leaving a remaining balance of $38,078 in unpaid wages (six invoices).

24. Plaintiff made multiple good faith attempts to collect the unpaid wages, but Defendant failed to make payment.

25. On May 21, 2025, in an e-mail with Plaintiff, Defendant and/or its employees or agents did not dispute that it owed Plaintiff her wages. Defendant stated that they were waiting for a certain payment to be received and that they would "circle back in short order."

26. On June 6, 2025, Defendant Spikes responded to Plaintiff via e-mail that he was "working on getting you a payback schedule as soon as possible, but I'm still waiting on updated sales projections for this upcoming year." He further shared that "progress is definitely being made." Again, Defendant did not dispute that it owed Plaintiff her wages.

27. The unpaid compensation constitutes earned, non-discretionary wages that are not contingent on any external factors.

28. In addition to the unpaid wages, and pursuant to her employment agreement, Plaintiff is also entitled to a $10,000 reimbursement for health, dental and vision coverage. To date, Defendant did not pay Plaintiff for this reimbursement.

### III. Misclassification and Failure to Receive Proper Wage Notices

29. Although Plaintiff was clearly designated as an employee in her employment agreement and worked full-time in an executive capacity, Defendant improperly classified her as

an independent contractor. Defendant issued Form 1099, rather than a W-2, and required to submit invoices to receive regular wages.

30. As a result of the misclassification, Plaintiff incurred tax liabilities that would not have applied had she been properly classified.

31. Defendant's misclassification also led to violations of the NYLL, including the failure to provide wage statements with payment, as required by law.

32. As a result of Defendants' unlawful conduct, Plaintiff seeks i) her unpaid wages, ii) liquidated damages, iii) reimbursement of $10,000 for health care coverage, iv) statutory penalties for failure to provide wage statements, v) attorneys' fees and costs, and vi) pre-judgment interest.

## COUNT I
## BREACH OF CONTRACT

33. Plaintiff repeats and realleges all preceding paragraphs of this Complaint, as if fully set forth herein.

34. On February 20, 2024, Plaintiff and Defendants entered into a valid and binding written employment agreement (the "Agreement").

35. The Agreement was signed by Plaintiff and Defendant Spikes.

36. Pursuant to the Agreement, Defendants agreed to reimburse Plaintiff for medical coverage, as set forth below:

> The Company shall reimburse comprehensive health, dental and vision insurance coverage, standard for the size of Urbanworld Foundation, Inc. and other non-profit entities in NY State, starting from March 18, 2024. *At a maximum of $10,000 annually.*

37. Defendants materially breached the Agreement by failing to reimburse Plaintiff for health insurance coverage as required by the terms of the Agreement.

38. As a direct and proximate result of Defendants' breach, Plaintiff sustained financial damages.

## COUNT II
### VIOLATION OF THE FLSA – FAILURE TO PAY WAGES

39. Plaintiff repeats and realleges all preceding paragraphs of this Complaint, as if fully set forth herein.

40. At all relevant times, Defendant was an employer and Plaintiff was an employee within the meaning of the FLSA.

41. At all relevant times, Defendant's revenue exceeded $500,000.

42. At all relevant times, Defendant Spikes exercised control and authority over Plaintiff's employment, including but not limited to the decisions relating to payment.

43. Defendant employed Plaintiff in interstate commerce within the meaning of the FLSA. For example, Plaintiff regularly worked with partners across the country, including but not limited to telephone calls, e-mails, invoicing and more.

44. 29 USC § 206 requires employers to pay their employees their agreed-upon wages for all hours worked, and at least minimum wage.

45. From August 2024 to December 2024, Defendants failed to pay any wages for her work.

46. From August 2024 to December 2024, Defendants failed to pay Plaintiff her lawfully earned wages.

47. At all relevant times, Defendants knew and/or showed a willful disregard for the provisions of the FLSA.

48. As a result of Defendants' unlawful conduct, Plaintiff is entitled to recover unpaid wages, an equal amount as liquidated damages, reasonable attorneys' fees and costs.

## COUNT III
## VIOLATION OF NYLL – FAILURE TO PAY WAGES

49. Plaintiff repeats and realleges all preceding paragraphs of this Complaint, as if fully set forth herein.

50. At all relevant times, Defendants were an employer and Plaintiff was an employee within the meaning of the NYLL.

51. NYLL requires employers to pay their employees their agreed-upon wages for all hours worked, and at least minimum wage.

52. From August 2024 to December 2024, Defendants failed to pay any wages for her work.

53. From August 2024 to December 2024, Defendants failed to pay Plaintiff her lawfully earned wages.

54. As a result of Defendants' unlawful conduct, Plaintiff is entitled to recover unpaid wages, an equal amount as liquidated damages, reasonable attorneys' fees and costs.

## COUNT IV
## VIOLATION OF NYLL § 195(3)

55. Plaintiff repeats and realleges all preceding paragraphs of this Complaint, as if fully set forth herein.

56. At all relevant times, Defendants were an employer and Plaintiff was an employee within the meaning of the NYLL.

57. NYLL § 195(3) requires employers "furnish each employee with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and

basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage."

58. At all time, Defendants failed to provide accurate wage statements with each payment of wages, as required by law.

59. Pursuant to NYLL § 198, Plaintiff is entitled to recover statutory penalties of $250 per day (not to exceed $5,000) and reasonable attorneys' fees and costs.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests relief against Defendants as follows:

a. Monetary damages in an amount to be determined by the jury, including but not limited to an award of unpaid compensation and liquidated damages;

b. Attorneys' fees and costs, plus interest; and

c. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: New York, New York
August 4, 2025

Respectfully submitted,

/s/ *Brittany Weiner*
Brittany Weiner, Esq.
Imbesi Law Group P.C.
1501 Broadway, 12th Floor
New York, New York 10036
Tel. (646) 767-2271
Fax. (212) 658-9177
brittany@lawicm.com
***Attorneys for Plaintiff***

8